UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**WILCOX ASSOCIATES, INC., HEXAGON
METROLOGY AB, AND ROMER, INC.,**

                            **Plaintiffs,**        **CASE NO. 08-14695**
                                         **HONORABLE DENISE PAGE HOOD**

**v.**

**XSPECT SOLUTIONS,**

                            **Defendant.**
_____/

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS AND
SCHEDULING STATUS CONFERENCE**

**I.      INTRODUCTION**

This matter is before the Court on Defendant Xspect Solutions, Inc.'s ("Xspect") Motion to

Dismiss (Partial) Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on December 19, 2008.

Plaintiffs, Wilcox Associates, Inc. ("Wilcox"), Hexagon Metrology AB ("HexMet AB"), and

Romer, Inc. ("Romer") filed a Response in Opposition to Defendant's Motion on January 21, 2009.[1]

Defendant filed a Reply on January 30, 2009.  A hearing on this matter was held on February 18,

2009.

---

[1] Wilcox is a Delaware corporation, with its principal place of business in North
Kingston, Rhode Island.  HexMet AB is a Swedish corporation, with its principal place of
business in Nacka Strand, Sweden.  Romer is a California corporation, with its principal place of
business in Carlsbad, California.

1

## II.    STATEMENT OF FACTS

On November 5, 2008, Plaintiffs, an affiliated group of companies in the business of providing, developing, manufacturing, and selling dimensional metrology products, including coordinate measuring machines ("CMMs")[2], filed this action alleging that Defendant, a Michigan corporation, has violated and continues to violate the Lanham Act, 15 U.S.C. § 1051 *et seq*., as well as has committed trademark infringement under Michigan common law by its use and registration of domain names that are nearly identical or confusingly similar to Plaintiffs' trademarks affiliated with their CMMs.

Plaintiffs allege that Defendant, a business which provides coordinate metrology solutions to manufacturers and directly competes with Plaintiffs, has systematically engaged in a campaign of domain name registrations that incorporate trademarks owned by Plaintiffs, or are confusingly similar derivatives thereof.  Plaintiffs own the BROWN & SHARPE (Stylized), BROWN & SHARPE, HEXAGON, HEXAGON METROLOGY, ROMER, and PC-DMIS trademarks (collectively, the "Marks"), all in connection generally with CMMs.  Plaintiffs allege that Defendant, in full knowledge of Plaintiffs' ownership interests and use of the Marks, in 2004 and 2005, registered at least fifty-two domain names incorporating the Marks, and used the associated web sites to divert potential customers from Plaintiffs to Defendant.  Plaintiffs allege that they have spent substantial time, effort, and money in the development and promotion of their goods and services using the Marks.

Defendant registered the following domain names, which are the subject of this suit: (1)

_____

[2] CMMs are used by manufacturers to measure and reproduce three-dimensional objects.

2

Brownsharp-cmm.info; (2) Brown-sharp-cmm.info; (3) Brownsharpecmm.info; (4) Brown-sharpe-cmm.info; (5) Hexagoncmm.com; (6) Hexagon-cmm.com (7) Hexagon-metrology.net; (8) Hexmet.org; (9) Romer-arm.info; (10) Used-pc-dmis-cmm.com. Plaintiffs assert that Defendant's registration of these particular domain names evidences a bad faith intent to profit from Plaintiffs' Marks, as Defendant's use of the domain names has created and does create a likelihood of confusion as to the source, sponsorship and affiliation of Defendant's products.

As proof of Defendant's bad faith intent to profit from Plaintiffs' Marks, Plaintiffs also state in the Complaint that on May 2, 2005, Plaintiffs, along with other related companies (collectively the "Complainants"), filed a complaint alleging that Defendant had registered, in bad faith, forty-two domain names[3] that were virtually identical or confusingly similar to the Marks owned by Complainants' corporate names and trademarks, with the World Intellectual Property Organization Arbitration and Mediation Center ("WIPO-AMC"). Despite being properly served with the notice of the proceedings, Defendant failed to respond to the complaint. On June 22, 2005, WIPO -AMC issued an Administrative Panel Decision finding that Defendant had no rights or legitimate interests in any of the forty-two registered domain names, which were found to be virtually identical or confusingly similar to the Complainants' corporate names or trademarks. Additionally, the WIPO-AMC panel found that Defendant had engaged in bad faith in registering these domain names which "form a vast trap or funnel through which Internet users looking for Complainants' products are actually redirected to Respondent's website. . . . This conduct clearly evidences bad faith . . . the fact that the President of Respondent was formally employed by one of the Complainants evidences the

---

[3] Plaintiffs allege in the Complaint that, at the time they filed the WIPO-AMC action, they were unaware of the 10 domain names that are the subject of this action.

willful and intentional use of Complainants' trademarks." Plfs.' Compl., Ex. 6, p.11. The WIPO-AMC also ordered the forty-two domain names to be transferred to the Complainants.

In addition to registering, re-registering and using the domain names that are the subject of this action, Defendant also advertises on its website that Defendant is the approved source for certain machines produced by Plaintiffs even though Defendant's goods and services are not authorized or affiliated with any of the Plaintiffs. Plaintiffs allege that Defendant has engaged in these activities with the intent to divert consumers interested in Plaintiffs' CMMs to Defendant's website URLs for commercial gain. For example, Plaintiffs state that Defendant's website states, "We are the Factory" and displays a photograph of a Brown & Sharpe CMM below this statement. Plfs.' Complaint, ¶¶ 56-57. Defendant also represents on said website that it is "Your Approved Source for Used Hexagon TM CMM Machines" despite the fact that Plaintiffs have not made any such authorization, rendering Defendant's representations false and likely to mislead the relevant purchasing public into buying Hexagon-CMMs from Defendant.

As a result of Defendant's unlawful activities, Plaintiffs assert that Defendant is trading on the good will and name recognition of Plaintiffs' Marks. Plaintiffs' Complaint alleges: (1) Count I, Trademark Infringement in violation of 15 U.S.C. § 1114; (2) Count II, False Designation of Origin in violation of 15 U.S.C. § 1125(a); (3) Count III, False Advertising in violation of 15 U.S.C. § 1125(a); Count IV, Cybersquatting, 15 U.S.C. §1125(d); (5) Count V, Common Law Trademark Infringement. Plaintiffs also seek attorneys fees pursuant to §1117 because Defendant's activities have been willful and intentional rendering this an exceptional case warranting the award of attorney fees.

4

### III.   APPLICABLE LAW & ANALYSIS

#### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted.  This type of motion tests the legal sufficiency of the plaintiff's Complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).  A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6).  *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999).  Further, the court construes the Complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

#### B.   Defendant's Motion to Dismiss

Defendant brings the present Motion to Dismiss arguing that Plaintiffs' Complaint is barred by the doctrine of laches, because Plaintiffs failed to act in a timely manner in bringing the instant action.  Defendant argues that each of the domain names at issue were registered by January 12, 2005, which was five months prior to the filing of the WIPO-AMC complaint.[4]  Defendant argues

---

[4]  Exhibit seven (7) of Plaintiffs' Complaint indicates that the following domain names were registered on the following dates:

(1) brownsharp-cmm.info  – September 29, 2004
(2) brown-sharp-cmm.info – September 29, 2004
(3) brownsharpecmm.info – September 29, 2004
(4) brown-sharpe-cmm.info – September 28, 2004
(5) hexagoncmm.com – January 12, 2005
(6) hexagon-cmm.com – January 12, 2005
(7) hexagon-metrology.net – September 22, 2004
(8) hexmet.org – September 23, 2004

5

that Plaintiffs had notice, either actual or constructive, of the existence of the registered domain names as of the date of their registration and, at a minimum, by May of 2005 when the WIPO-AMC complaint was filed.  As such, Plaintiffs filed the instant action at least eight months after the applicable limitations period had expired.

Laches is an affirmative defense defined as "the negligent and unintentional failure to protect one's rights." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F. 3d 397, 408 (6th Cir. 2002).  In this circuit, laches only bars damages occurring prior to the commencement of suit, but does not bar Plaintiffs' right to "injunctive relief[5] or post-filing damages." *Id.* at 412.   Defendant must demonstrate (1) a lack of diligence by Plaintiff, and (2) Defendant has suffered prejudice. *Id.* at 408. "[T]here is a strong presumption that a plaintiff's delay in asserting its right is reasonable as long as an analogous state statute of limitations has not elapsed." *Id.*  Diligence in protecting a party's "trademark is measured by the state-law statute of limitations for injury to personal property." *Id.* In Michigan, the statute of limitations for injury to personal property is three years.[6] *Id.*  As such, "a delay beyond the three-year statutory period is presumptively prejudicial and unreasonable." *Id.* "The period of delay begins to run when plaintiff had actual or constructive knowledge of the alleged infringing activity." *Id.* (internal quotations omitted).  A plaintiff may rebut the presumption

_____

(9) romer-arm.info –September 29, 2004
(10) used-pc-dmis.cmm.com – May 17, 2004

[5]  "To defeat a suit for injunctive relief, a defendant must also prove elements of estoppel which requires more than a showing of mere silence on the part of a plaintiff; defendant must show that it had been misled by plaintiff through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment of the trademark." *Nartron*, 305 F. 3d at 412-13.

[6]  Trademark claims, both under the Lanham Act and Michigan common law, are treated as injury to personal property pursuant to the Michigan statute of limitations. *See* MICH. COMP. LAWS § 600.5805(8).

6

of laches by "(1) rebut[ting] the presumption of prejudice; (2) establish that there was a good excuse for its delay; or (3) show that the defendant engaged in "particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Id.* at 409 (internal quotations omitted).

Plaintiffs allege in the Complaint that at the time the WIPO-AMC action was filed, they had no knowledge of the domain names at issue in this action. Defendant argues that Plaintiffs were on notice at least as of May 2, 2005, if not earlier, of Defendant's registration of the ten domain names at issue by virtue of their registration, rendering them available to the public. Additionally, Defendants assert that as part of their due diligence in connection with the WIPO-AMC action, Plaintiffs should have been aware of Defendant's ten domain names at issue herein. Defendant relies on the Sixth Circuit's analysis in *Herman Miller, Inc. v. Palazezetti Imps. & Exps., Inc.*, 270 F. 3d 298 (6th Cir. 2001), to demonstrate that Plaintiffs were not diligent about policing their Marks, and "should have been aware of or should have become aware of" the other ten domain name registrations at the time Plaintiffs filed the WIPO-AMC action claiming that Defendant was unlawfully using forty-two domain names, as all ten had been registered between four and eleven months prior to the WIPO-AMC action. *See Herman Miller*, 270 F. 3d at 321.

In *Herman Miller*, the plaintiff argued that it had no knowledge of the defendant's reproduction of a specific chair and ottoman, which was designed for the plaintiff in 1956, until 1994. *Id.* at 301, 321. The court concluded that the plaintiff should have been aware of the defendant's production of imitations of the chair and ottoman, based on the defendant's action in reproducing the plaintiff's designed furniture, specifically Plaintiff's 'potato chip chair' in the 1990s, which the plaintiff was aware of. *Id.* at 321. As such, the court concluded that the district court did not err in finding that the plaintiff was precluded from recovering pre-suit monetary

7

damages based on the doctrine of laches because Plaintiff lacked diligence in filing suit. *Id.* Once the plaintiff was aware of the defendant's reproduction of the plaintiff's furniture in 1990, plaintiff should have been or become aware of the fact that defendant was also reproducing the lounge chair and ottoman. *Id*.

Even taking the Plaintiffs' factual allegations as true, the Court agrees with Defendant that Plaintiff should have been aware of the ten domain names when it filed the WIPO-AMC action based on its knowledge of Defendant's activities in registering the other forty-two domain names, which used Plaintiffs' Marks. The ten domain names at issue here were registered and publically available at the time of the WIPO-AMC action, and Plaintiffs should have been aware of the ten domain names registered by Defendant. As such, Plaintiffs presumably should have filed the present matter within three years of the commencement of the WIPO-AMC action, or by May 2, 2008. Notwithstanding that this results in a presumption of laches, the Court cannot conclude that Defendant is entitled to invoke this defense. Plaintiff has sufficiently rebutted the presumption of laches by (1) rebutting the presumption of prejudice to Defendant and (2) demonstrating particularly egregious conduct by Defendant. *Nartron*, 305 F. 3d at 409.

This matter is unlike the *Nartron* case, where the Court found that "the record demonstrate[d] considerable prejudice[,]" to the defendant. *Id.* at 411. In *Nartron*, the plaintiff's delay in filing suit was roughly eight years. The Sixth Circuit found that the record demonstrated that plaintiff "had actual or constructive notice of [the defendant's] use, at least by 1990." *Id.* at 409. The plaintiff did not file suit until 1998. In the instant case, Plaintiff filed its action roughly eight months beyond the applicable statute of limitations. Further, there has been no specific allegation of prejudice asserted by Defendant. Such a delay is not comparable to the facts of *Nartron*, where important witnesses

8

were no longer available or lacked sufficient memories.  *Id.* at 412.  Unlike *Nartron*, the cost of defending this action has not increased significantly as was the case with the eight year delay in *Nartron*.  Defendant merely argues that "material documents and witnesses may have been lost–or may now be much more difficult to track down and access– as a result of the delay."  *See* Def.'s Mot. to Dismiss, at 10.

Defendant relies on the case, *Ford Motor Co. v. Powerflow, Inc*., No. 86-74100, 2006 U.S. Dist. LEXIS 53464 (E.D.  Mich. Aug. 2, 2006), in support of its position, however this case is distinguishable from the facts of this case.   The court in *Ford* found that the plaintiff had actual notice of the alleged infringing activity some five years earlier than when the plaintiff filed its action in the district court.  *Id.* at *22.  Specifically, the plaintiff was aware that the defendant was manufacturing and distributing automobile accessories bearing the plaintiff's trademark in the United States.  *Id.* at *25.  Based on the plaintiff's roughly five year delay in bringing suit, the defendant would have increased liability as to the amount of damages.  *Id.*  If the plaintiff had filed suit sooner, the defendant could have changed to a Canadian manufacturer earlier, decreasing the amount of damages it would be exposed to.[7]  *Id.*  Also relevant is the fact that the defendant's attorney had died in the intervening time period from the plaintiff's notice of the alleged infringing activity, to the date of filing the action, and the court found that this would increase the defendant's legal fees since "a new attorney had to reconstruct and review case history and conduct meetings with [the defendant's] representatives."  *Id.* at 26.

The Court also finds there is sufficient evidence of Defendant's egregious conduct.  As this

---

[7]  The case was originally settled when the parties entered into a Consent Judgment, whereby the defendant was permanently enjoined from manufacturing, distributing, or selling automobile accessory products bearing the plaintiff's trademarks in the United States.  *Id.* at *5.

9

is a 12(b)(6) motion to dismiss, the Court is required to accept the allegations in the Complaint as true.[8]   *Ziegler*, 249 F.3d at 512.   Plaintiffs' Complaint alleges that Defendant has engaged in an intentional, willful effort to profit from the goodwill of Plaintiffs' Marks by registering and using domain names that are nearly identical or confusingly similar to Plaintiffs' Marks.   As support for this contention, the Court notes Plaintiffs' allegations in regard to the WIPO-AMC action and the panel's decision, where Defendant was found to have no legitimate interest or right in the forty-two domain names, which "form[ed] a vast trap or funnel through which Internet users looking for Complainants' products are actually redirected to [Defendant's] website.   Defendant intentionally seeks to attract, through such confusion, Internet users to its website . . . .   This conduct clearly evidences bad faith."   Additionally, Defendant was required to transfer the forty-two domain names to Plaintiffs.

Plaintiffs allege that the ten domain names that are a part of this proceeding are nearly identical to those domain names that were the subject of the WIPO-AMC action.   Plaintiffs further assert that Defendant's continuous use of all ten domain names, and the 2007 and 2008 re-registrations of five of the domain names at issue here was done in bad faith.   *See* Plfs.' Resp. in Opp., Ex. B.   Defendant knew of Plaintiffs' right to the Marks and that the ten domain names at issue here were confusingly similar to Plaintiffs' Marks when it registered, used and trafficked the domain names.   The Court finds that the continuous use of the ten domain names when viewed in conjunction with the WIPO-AMC's decision regarding the forty-two nearly identical domain names sufficiently supports a claim for bad faith.

---

[8]  The Court declines to convert this motion to dismiss to a motion for summary judgment as Defendant suggests.

10

Because the Court concludes that Plaintiffs have rebutted the presumption of laches it will not discuss Plaintiffs' other arguments, specifically that Defendant's re-registration of the domain names can be considered independent actions, fixing the date of Defendant's ACPA violations well after November 5, 2005. Likewise, the Court will not address Plaintiffs' argument in regard to the ACPA and Plaintiffs' contention that it is subject to a four year statute of limitations pursuant to 28 U.S.C. § 1658.

## IV.   CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)[**Docket No. 14, filed on December 19, 2008**] is DENIED.

IT IS FURTHER ORDERED that the parties appear for a Status Conference on <u>October 21, 2009 at 4:15 p.m.</u>

IT IS SO ORDERED.

<u>S/Denise Page Hood</u>
Denise Page Hood
United States District Judge

Dated:  September 24, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 24, 2009, by electronic and/or ordinary mail.

<u>S/William F. Lewis</u>
Case Manager

11